Marilyn Rae **BASKIN** and Esther Fuller; Bonnie Everly and Linda Judkins; Dawn Lynn Carver and Pamela Ruth Elease Eanes; Henry Greene and Glenn Funkhouser, individually and as parents and next friends of C.A.G.; and Amy Sandler and Nikole Quasney, Plaintiffs,

v.

Penny **BOGAN**, in her official capacity as Boone County Clerk; Karen M. Martin, in her official capacity as Porter County Clerk; Michael A. Brown, in his official capacity as Lake County Clerk; Peggy Beaver, in her official capacity as Hamilton County Clerk; William C. VanNess, in his official capacity as the Commissioner, Indiana State Department of Health; and Greg Zoeller, in his official capacity as Indiana Attorney General, Defendants.

No. 1:14–cv–00355–RLY–TAB.

United States District Court, S.D. Indiana, Indianapolis Division.

Signed April 18, 2014.

Barbara J. Baird, The Law Office of Barbara J. Baird, Indianapolis, IN, Brent Phillip Ray, Jordan Heinz, Kirkland & Ellis LLP, Camilla B. Taylor, Christopher R. Clark, Lambda Legal Defense and Education Fund, Inc., Chicago, IL, Paul D. Castillo, Lambda Legal Defense and Education Fund, Inc., Dallas, TX, for Plaintiffs.

Robert V. Clutter, Kirtley, Taylor, Sims, Chadd & Minnette, P.C., Lebanon, IN, Elizabeth A. Knight, Valparaiso, IN, Nancy Moore Tiller, Nancy Moore Tiller & Associates, Crown Point, IN, Thomas M. Fisher, Office of the Attorney General, Indianapolis, IN, Darren J. Murphy, Howard & Associates, Noblesville, IN, for Defendants.

## ENTRY ON PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

RICHARD L. YOUNG, Chief Judge.

Plaintiffs, Amy Sandler and Nikole ("Niki") Quasney, ask this court to grant a temporary restraining order requiring the state of Indiana to recognize their out-of-state marriage. The court held a hearing on April 10, 2014, and issued a bench ruling **GRANTING** the temporary restraining order, which expires 28 days from that date, on May 8, 2014. Consistent with that ruling, the court issues the following written order.

### I. Background

Plaintiffs, Niki Quasney and Amy Sandler, have been in a loving and committed relationship for more than thirteen years. (Declaration of Nikole Quasney ("Quasney Dec.") ¶ 2, Filing No. 32–2). They have two very young children, A.Q.-S. and M.Q.-S. (*Id.* at ¶ 2). On June 7, 2011, Amy and Niki entered into a civil union in Illinois. (*Id.* at ¶ 3). Then, on August 29, 2013, they were married in Massachusetts.[1] (*Id.*).

In late May of 2009, Niki was diagnosed with Stage IV Ovarian cancer. (*Id.* at ¶ 9). She and Amy immediately flew to Chicago for treatment, and just a couple of days later in June 2009, surgeons removed over

---

**1.** Massachusetts allows for same-sex couples to marry.

100 tumors throughout Niki's abdomen, including her liver, kidneys, diaphragm, and bladder. (*Id.* at ¶ 11). At that time, the median survival rate for her cancer was five years. (*Id.* at ¶ 5). Ever since, Niki has been battling her cancer with the most aggressive treatments she can endure while maintaining some quality of life.[2] (*Id.* at ¶ 7). Every three weeks, Niki's doctor performs a CA–125 test, which is a blood test to check the tumor marker for ovarian cancer. (Supplemental Declaration of Nikole Quasney ("Quasney Supp. Dec.") ¶ 1; Hearing Exhibit C). Three weeks ago, the test showed Niki's level was near normal at 37. (*Id.*). Unfortunately, on April 9, 2014, that level soared to 106. (*Id.* at ¶ 2). On Wednesday, April 16, 2014, Niki will begin a new chemotherapy treatment. (*Id.* at ¶ 4).

Because Niki is fighting a fatal disease and is nearing the five year survival rate, she and Amy requested that the court issue a temporary restraining order and/or preliminary injunction preventing Indiana from enforcing Indiana Code § 31–11–1–1(b) as applied against them and requiring the state, through the Defendants, to recognize Niki as married to Amy on her death certificate.

## II. Standard

■ The court has the power to issue a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65. The court may grant a TRO if the movant: (1) has some likelihood of succeeding on the merits, (2) has no adequate remedy at law, and (3) will suffer irreparable harm if the order is denied. *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th

Cir.1992). If these three elements are met, the court will consider any irreparable harm to the non-movant and balance it against the harm to the movant. *See id.* at 12. The Seventh Circuit evaluates the balance on a sliding scale so that "the more likely it is the plaintiff will succeed on the merits, the less balance of irreparable harm need weigh towards its side." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir.2013).

## III. Discussion

### A. Standing for Temporary Restraining Order

■ Defendants first argued that the Plaintiffs are in actuality seeking a declaratory judgment rather than a TRO. According to Defendants, the court cannot grant a TRO here because the Plaintiffs suffer no cognizable Article III harm that a restraining order can remedy. The court disagrees with Defendants. To satisfy Article III, the injuries alleged may be slight. As the United States Supreme Court said, "[a]n identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation." *Harris*, 927 F.2d at 1406 (finding a cognizable injury when plaintiff "mightily strives to avoid any visible contact" with the Rolling Meadows seal by utilizing alternative travel routes) (quoting *United States v. SCRAP*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). The Plaintiffs here have shown cognizable injuries that a TRO can remedy because Niki drives across state lines to

---

**2.** Niki went into remission in July 2010. (Quasney Dec. ¶ 13). She had more tumors removed in September of 2011. (*Id.* at ¶ 18). In May of 2012, Niki again was in remission.

(*Id.* at ¶ 20). She completed her most recent treatment of chemotherapy approximately four weeks ago. (Quasney Supp. Dec. ¶ 4).

receive treatment from a hospital that will recognize her marriage, Niki and Amy have been denied a family fitness membership, and they suffer anxiety, sadness, and stress about the nonrecognition of their marriage and what that means if and when Niki succumbs to her disease. (Quasney Dec. ¶ 24, 25, 26, 30; Quasney Supp. Dec. ¶ 7).

 Additionally, Defendants argue that the dignitary harm suffered by Plaintiffs is not cognizable under Article III of the United States Constitution, and therefore an adequate remedy at law need not exist for that harm and it cannot qualify as irreparable. *See Harris v. City of Zion, Lake County, Ill.,* 927 F.2d 1401, 1405 (7th Cir.1991) ("the requirement that the plaintiff allege an 'injury-in-fact,' whether economic or noneconomic, excludes simple indignation as a basis for Article III standing."). The court again disagrees and finds that the deprivation of the dignity of a state sanctioned marriage is a cognizable injury under Article III. *See Windsor,* 133 S.Ct. at 2694. In *Windsor,* Justice Kennedy emphasized the dignitary harms suffered as a result of the Defense of Marriage Act ("DOMA"). For example, he noted that "[t]he differentiation demeans the couple, whose moral and sexual choices the Constitution protects.... And it humiliates tens of thousands of children now being raised by same-sex couples." *Id.* (citing *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003)). He stressed the fact that the states wished to confer dignity on certain marriages that the federal government, through DOMA, was taking away by not recognizing the marriages. *See id.* Thus, the court finds that *Windsor* recognized and remedied a dignitary injury. Finding that a TRO is an appropriate

remedy, the court now turns to the criteria for a TRO.

## B. Temporary Restraining Order

### i. Some Likelihood of Success on the Merits

 To satisfy the first requirement, the Plaintiffs' chance of success must be more than negligible. *See Brunswick Corp. v. Jones,* 784 F.2d 271, 275 (7th Cir.1986). In support of their position that Indiana Code 31–11–1–1(b) is unconstitutional, Plaintiffs rely on the wave of recent cases finding that similar state statutes and state constitutional amendments violate the Equal Protection Clause and the Due Process Clause. *See Tanco v. Haslam,* 7 F.Supp.3d 759, No. 3:13–cv–01159, 2014 WL 997525 (M.D.Tenn. Mar. 14, 2014); *De Leon v. Perry,* 975 F.Supp.2d 632 (W.D.Tex.2014); *Lee v. Orr,* No. 1:13–cv–08719, 2014 WL 683680 (N.D.Ill. Feb. 21, 2014); *Bostic v. Rainey,* 970 F.Supp.2d 456 (E.D.Va.2014); *Bourke v. Beshear,* 996 F.Supp.2d 542, No. 3:13–cv750–H, 2014 WL 556729 (W.D.Ky. Feb. 12, 2014); *Kitchen v. Herbert,* 961 F.Supp.2d 1181 (D.Utah 2013); *Bishop v. United States ex rel. Holder,* 962 F.Supp.2d 1252 (N.D.Okla. 2014). In particular, Plaintiffs rely on two cases where temporary relief was granted when one of the spouses was suffering from a fatal disease. *See Obergefell v. Kasich,* No. 1:13–cv–501, 2013 WL 3814262 (S.D.Ohio Jul. 22, 2103) (granting TRO ordering Ohio to recognize the marriage of a same-sex couple where one spouse was terminally ill); *see also Gray v. Orr,* 4 F.Supp.3d 984, No. 13C8449, 2013 WL 6355918 (N.D.Ill. Dec. 5, 2013) (granting a TRO to allow same-sex couple to marry before the effective date of newly enacted statute authorizing same-sex marriages because one partner was terminally ill). The

court finds these decisions to be particularly persuasive.

Defendants counter that the authority of the states to define marriage can be traced back to this nation's founding, and that the district court opinions favoring Plaintiffs' position have misunderstood *United States v. Windsor,* —— U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013). According to Defendants, there is no right to have one's marriage recognized; rather, recognition is merely a matter of comity that is left to the states. In support, Defendants rely on a case where Indiana did not recognize the marriage between an uncle and niece from Russia; however, the court notes that the parties did not contest that their marriage was void on appeal. *See Sclamberg v. Sclamberg,* 220 Ind. 209, 41 N.E.2d 801 (1942). Defendants concede that Indiana will recognize marriages between first cousins, even though such a marriage is generally prohibited within the state. Therefore, the court finds that as a general rule, Indiana recognizes valid marriages performed in other states.

 The court agrees with Defendants that marriage and domestic relations are generally left to the states. Nevertheless, the restrictions put in place by the state must comply with the United States Constitution's guarantees of equal protection of the laws and due process. *See Windsor* at 2691 (citing *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (invalidating Virginia's statute banning marriages based on race)). The Equal Protection Clause requires states to treat people equally under the law; if the state wishes to differentiate between people and make them unequal, then it must have at least a legitimate purpose.

According to Defendants the state of Indiana does not recognize same-sex marriages performed elsewhere because:

it calls into question the State's own philosophical understanding of the nature of government-recognized marriage, the State's traditional marriage definition being predicated on the idea that we want to attract and then regulate couples that may unintentionally procreate for the sake of the children.

Additionally, "[i]t creates a social norm and relieves burdens on the State that may occur in the event that unwanted children are uncared for.... It's the idea of ameliorating the consequences of unintended children." This philosophy on marriage, however, does not distinguish Indiana from the wave of recent cases finding similar statutes to be unconstitutional. *See Bishop v. U.S. ex rel. Holder,* 962 F.Supp.2d 1252 (N.D.Okla.2014) (finding there is no rational link between excluding same-sex marriages and "steering 'naturally procreative' relationships into marriage, in order to reduce the number of children born out of wedlock and reduce economic burdens on the State"); *see also DeBoer v. Snyder,* 973 F.Supp.2d 757, 760–61 (E.D.Mich.2014) (noting that prohibiting same-sex marriages "does not stop [gay men and lesbian women] from forming families and raising children").

The court finds that this cannot be the entire rationale underlying the traditional marriage. Additionally, this philosophy is problematic in that the state of Indiana generally recognizes marriages of individuals who cannot procreate. For example, Indiana recognizes the marriages of opposite-sex couples that occurred in Florida that are well past their procreative years.[3]

---

**3.** On the other hand, the state of Indiana did not recognize the marriage of an uncle and niece who had two children together. This marriage had the potential for unintentional procreation, yet it was a void marriage. *See Sclamberg,* 41 N.E.2d at 802.

This philosophy does not apply to them, so under the state's philosophy, their marriage should not be recognized here. Further, before recognizing an out-of-state marriage on a death certificate, the state of Indiana does not inquire whether the couple had the ability to procreate unintentionally.

■ Therefore, on this record, the court finds there will likely be insufficient evidence of a legitimate state interest to justify the singling out of same-sex married couples for non-recognition. The court thus finds that Plaintiffs have at least some likelihood of success on the merits because "the principal effect" of Indiana's statute "is to identify a subset of state-sanctioned marriages and make them unequal." *Windsor*, 133 S.Ct. at 2694.

### ii. Availability of an Adequate Remedy at Law

Defendants argue that adequate remedies at law exist for Plaintiffs. For example, assuming arguendo the state eventually does recognize same-sex marriages, if Niki should pass away prior to the state recognizing their marriage, Amy could receive an amended death certificate. Additionally, Amy and Niki can create a health care directive, which the hospitals must honor, and a last will and testament, which the courts will enforce. The court finds that these are not adequate remedies because they do not address survivor benefits and the dignitary harm Plaintiffs suffer. Additionally, state recognition of their marriage brings financial benefits, health care decision benefits, and death benefits.[4]

### iii. Irreparable Harm if the Order is Denied

■ The court finds Plaintiffs suffer a cognizable and irreparable harm stemming from the violation of their constitutional rights of due process and equal protection. As the Seventh Circuit noted, "[t]he existence of a continuing constitutional violation constitutes proof of an irreparable harm." *Preston v. Thompson*, 589 F.2d 300, 303 n. 3 (7th Cir.1978); *see also Does v. City of Indianapolis*, No. 1:06–cv–865–RLY–WTL, 2006 WL 2927598, *11 (S.D.Ind. Oct. 5, 2006) (quoting *Cohen v. Coahoma Cnty., Miss.*, 805 F.Supp. 398, 406 (N.D.Miss.1992) for the proposition that "[i]t has been repeatedly recognized by federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law."). A further showing of irreparable harm often is not required when monetary damages are not at stake. *See Back v. Carter*, 933 F.Supp. 738, 754 (N.D.Ind.1996) (internal quotation and citation omitted). The rule that courts do not require a further showing of irreparable harm "is based on the belief that equal protection rights are so fundamental to our society that any violation of these rules causes irreparable harm." *Id.*

### iv. Balancing of Harms

Finding that the Plaintiffs have met the criteria for a temporary restraining order, the court must balance the irreparable harm that Defendants may suffer against Plaintiffs' irreparable harm. Defendants

---

4. These death benefits include an elective share of Niki's estate regardless of her will and possibly the ability to receive Social Security benefits. *See* Ind.Code 29–1–3–1 and 20 C.F.R. § 404.345. These are benefits that Niki and/or Amy cannot receive via contractual agreements, but only through Indiana's recognition of their marriage.

did not allege that they or the state would suffer irreparable harm if the court granted the TRO. Additionally, as this court and others have previously held, the state experiences no harm when it is prevented from enforcing an unconstitutional statute. Therefore, the court finds that the balance weighs in favor of Niki and Amy.

## C. Length of the TRO

According to Federal Rule of Civil Procedure 65(b)(2), a TRO may last up to 14 days or be extended for another 14 days to a total of 28 days for good cause. The court finds that good cause exists here to extend the expiration of this ruling to twenty-eight days from today. These reasons include judicial economy (the court is adjudicating four other cases challenging Indiana Code § 31–11–1–1) and fairness to those four other cases whose dispositive motions are due on April 21, 2014.

## IV. Conclusion

For the reasons set forth above, the court **GRANTS** Plaintiff's Motion for a Temporary Restraining Order. (Filing No. 31). Defendants and all those acting in concert are **ENJOINED** from enforcing Indiana statute § 31–11–1–1(b) against recognition of Plaintiffs Niki Quasney's and Amy Sandler's valid out-of-state marriage, and therefore, the state of Indiana must recognize only their marriage. In addition, should Ms. Quasney pass away in Indiana, the court orders William C. VanNess II, M.D., in his official capacity as the Commissioner of the Indiana State Department of Health and all those acting in concert, to issue a death certificate that records her marital status as "married" and lists Plaintiff Amy Sandler as the "sur-

viving spouse." This order shall require that Defendant VanNess issue directives to local health departments, funeral homes, physicians, coroners, medical examiners, and others who may assist with the completion of said death certificate explaining their duties under the order of this court.

This order is set to **EXPIRE** on May 8, 2014.

